IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEON V. LIPSCOMB,<br><br>  Plaintiff,<br><br>v.<br><br>C/O RICE, C/O HAMPTON, ANTHONY WILLS, NURSE AMANDA, J. CRANE, MS. WILKS, KIMBERLY WEITEL, JOHN DOE CORRECTIONAL STAFF, JANE DOE MENTAL HEALTH PERSONNEL, and SCOUTZS,<br><br>  Defendants. | Case No. 23-cv-2800-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Keon V. Lipscomb, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Lipscomb alleges various defendants interfered with his hunger strike and allowed him to self-harm. He asserts claims against the defendants under the First and Eighth Amendments. Lipscomb seeks monetary damages and injunctive relief.[1]

---

[1] To the extent Lipscomb seeks to press criminal charges against Correctional Officers Hampton and Rice, that request is **DENIED as moot**. Section 1983 only provides for a civil remedy and is not a criminal statute.

1

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## **The Complaint**

In his Complaint, Lipscomb makes the following allegations: On July 10, 2023, Lipscomb declared a hunger strike, which he alleges was his attempt at peacefully exercising his First Amendment right to protest (Doc. 1, pp. 2, 9). The purpose of his hunger strike is not entirely clear, but he states he was peacefully protesting lack of medical and mental health treatment (*Id*. at p. 15). On July 14, 2023, Correctional Officer ("C/O") Hampton asked if Lipscomb wanted to continue with his hunger strike, and Lipscomb answered in the affirmative (*Id*. at p. 9). Two hours later, while picking up lunch trays, C/O Hampton placed a food tray in Lipscomb's food hatch (*Id*.).

Although Lipscomb inquired about the presence of the food tray, C/O Hampton ignored him and walked away (*Id*.). In response, Lipscomb self-mutilated, believing the act of self-mutilation would "shed light on the situation at hand." (*Id*.). An hour later, C/O Hampton removed Lipscomb from his cell and took him to a nurse to address his wounds (*Id.*). Lipscomb informed Nurse Jesse, the Nurse Practitioner, and mental health staff of his reason for self-harm, but he does not know if they documented his reason. He received stiches and was placed on suicide watch (*Id*.). Upon return to his cell,

C/O Hampton removed the food tray, but no one documented that Lipscomb did not eat the food on the tray. Lipscomb alleges a conspiracy to violate his First Amendment rights by placing the tray in his cell because he was removed from his hunger strike (*Id.* at p. 10).

On August 6, 2023, while on his 27th day of his hunger strike, Lipscomb began feeling weak and dizzy (*Id.*). He believes that his condition was related to health problems and the lack of proper treatment from nursing staff. He informed a correctional officer of his need to see a nurse because of a rapid heart rate (*Id.*). The John Doe officer informed Lipscomb that he had eaten breakfast and was no longer on a hunger strike, despite the fact that Lipscomb had not eaten (*Id.*). The officer refused Lipscomb's request to see a nurse. Instead, the officer suggested Lipscomb kill himself with a staple near Lipscomb's cell door (*Id.*). After the officer walked away, Lipscomb retrieved the staple (*Id.*). He tried to speak to a Jane Doe nurse on the 3 p.m. to 11 p.m. shift, but she ignored his requests (*Id.*). In response, Lipscomb cut his arm with the staple. He hit an artery and was taken to a local hospital (*Id.*).

While hospitalized for his self-cutting, doctors and nurses at the hospital convinced Lipscomb to end his hunger strike (*Id.* at p. 11). Upon his return, he learned Officer Rice falsified reports claiming Lipscomb accepted his breakfast tray on August 6, 2023 (*Id.* at pp. 11, 17). Nurses also refused to take his vital signs (*Id.*). Nurse Practitioner J. Crane also refused to admit him to the healthcare unit (*Id.*). Lipscomb later spoke with mental health staff member Ms. Wilks about his self-harm. Ms. Wilks informed Lipscomb that she was aware that the officer gave Lipscomb a staple and she knew he would self-harm, but she did not care because of his criminal case and she hoped that he would die

from the incident (*Id*. at p. 8). She also informed him that she was aware of his propensity to self-harm, but she did not care (*Id*. at p. 8). She informed him that mental health staff would no longer respect his rights under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and instead would allow security to attend his mental health meetings (*Id*.).

Lipscomb alleges that multiple correctional officers and health staff falsified reports claiming that Lipscomb was taken off of his hunger strike (*Id*. at p. 2). He also alleges mental health staff ignored his pleas for help and would not intervene to prevent him from self-harm. He alleges healthcare staff would not follow HIPAA laws, refused to take his vitals, and refused to admit him to the healthcare unit for closer observation (*Id*. at pp. 2-3). He also alleges the warden was aware of officer's filing false reports regarding the hunger strikes but did nothing to remedy the situation (*Id*. at p. 3).

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **First Amendment retaliation claim against Defendants for providing Lipscomb with meal trays while on a hunger strike.**

**Count 2:** **Eighth Amendment deliberate indifference claim against Defendants for denying Lipscomb access to medical care while on a hunger strike.**

**Count 3:** **Eighth Amendment failure to protect and deliberate indifference claim against Defendants for failing to stop Lipscomb from self-harming.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Preliminary Dismissals

Lipscomb may not proceed against the generic John and Jane Does, identified only as "John Doe Correctional Staff" and "Mental Health Personnel" (Doc. 1, p. 5). Although Lipscomb may certainly allege claims against identified John Does (i.e., John Doe #1, John Doe #2), he includes generic groups of nurses, correctional staff, and mental health personnel. These claims are too generic to survive threshold review as they do not describe the unknown staff members or even state the number of them. Lipscomb only alleges that multiple defendants, including mental health staff, officers, and nurses, acted with deliberate indifference but these allegations are too generic to set forth a claim against any unknown staff member. Thus, to the extent he alleges claims against generic John and Jane Does, those claims are **DISMISSED without prejudice**.

---

[2] This includes Lipscomb's proposed assault and intentional infliction of emotional distress claims as he fails to allege that any defendant assaulted him. Nor has he alleged how defendants harassed him or how that conduct caused him harm (*Id*. at p. 14). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). Lipscomb also seeks to bring a claim for violation of his HIPAA rights, but HIPAA does not authorize an individual to sue over a violation. Stated differently, "HIPAA does not furnish a private right of action." *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011).

Lipscomb also lists a "Scoutzs" in the caption of his Complaint (Doc. 1, p. 1) but fails to identify anyone by that name in his statement of claim. Thus, Scoutzs is also **DISMISSED without prejudice**.

**Count 1**

Simply put, Lipscomb fails to state a First Amendment retaliation claim.[3] In order to state a claim for retaliation for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor" behind the retaliatory actions. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Lipscomb alleges that on two occasions C/O Hampton and C/O Rice gave him food trays while he was on a hunger strike. Lipscomb alleges that his hunger strike was an act of peaceful protest and that he was complaining about lack of medical and mental health treatment (Doc. 1, p. 15). A hunger strike may be considered a First Amendment activity. *Stefanoff v. Hays Cnty., Tex.*, 154 F.3d 523, 527 (5th Cir. 1998) ("a hunger strike may be protected by the First Amendment if it was intended to convey a particularized message").

But even if a hunger strike is protected speech, Lipscomb fails to allege that handing him a tray of food was an action likely to deter free speech. *See Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011) (The test is "whether the alleged conduct by the

---

[3] Lipscomb seeks to pursue a retaliation claim under both the First and Fourteenth Amendment but fails to state how the Fourteenth Amendment applies to his claims.

defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity."). In fact, Lipscomb acknowledges that he did not eat the food and it appears that he continued with his hunger strike, despite allegations that the officers acted to remove Lipscomb from the hunger strike. Nothing in the Complaint suggests that Lipscomb suffered a deprivation likely to deter his speech. Thus, his retaliation claim is **DISMISSED without prejudice**.

Lipscomb also alleges that the warden is liable for his retaliation claim because the warden was aware of systemic problems with employees retaliating and either failed to do anything or allowed widespread use of retaliation to proceed. But other than conclusory statements that there was a policy or practice of retaliation, Lipscomb fails to allege such a practice. He only alleges two occasions where he was given a food tray and, as previously stated, he has not alleged that receiving a food tray would likely deter First Amendment conduct. Further, to the extent he alleges Warden Wills failed to properly supervise staff, that claim also fails because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Thus, any claim against Warden Wills is also **DISMISSED without prejudice**.

**Count 2**

Lipscomb does, however, state a claim against J. Crane for her response to his hunger strike. He alleges that Nurse Practitioner ("N.P") J. Crane failed to place him in the healthcare unit for closer observation after declaring his hunger strike (*Id*. at p. 3, 7). Lipscomb also alleges that the nurse practitioner kept him in the cellhouse despite being

7

on a hunger strike for 27 days and experiencing symptoms he believed were signs that his kidneys were failing (*Id.*). Once he returned from the hospital, Crane refused to admit him to the healthcare unit despite having symptoms of dizziness and racing heart from the lack of food.

"Prison officials can be held liable if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it." *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (citing *Farmer v. Brennan,* 511 U.S. 825, 846 (1994)). This duty to take reasonable measures to protect the safety of inmates includes situations where an inmate threatens to self-harm. *Id.* The Seventh Circuit has held, however, that when an inmate declares a hunger strike, he cannot maintain an Eighth Amendment claim where he is not seen by medical personnel immediately, and the only effects are weight loss and temporary discomfort. *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 21 days on hunger strike, inmate is taken to medical ward). Here, Lipscomb alleges more than weight loss and discomfort. He alleges that he was suffering from dizziness, racing heart, and issues with his kidneys, and had returned from the hospital following a self-harm event, yet J. Crane still refused to provide him with proper treatment. At this stage, Lipscomb states a claim against J. Crane in Count 2.

But Lipscomb fails to state a claim against any other named defendant. It is not clear how any of the other named defendants' actions violated Lipscomb's constitutional rights during his hunger strike. Lipscomb alleges that "nurses" refused to do vitals knowing that Lipscomb had serious medical complications, but he fails to indicate what

8

those complications were or how failing to take vitals amounted to deliberate indifference. He only identifies Nurse Amanda and alleges that she refused to take his vitals on the 7 a.m. to 3 p.m. shift, but he provides no further allegations as to when this occurred. Nor has he provided facts that suggest she acted with deliberate indifference to his hunger strike (Doc. 1, p. 7). This is not enough to state a deliberate indifference claim against any of the other defendants.

Lipscomb also alleges that Defendants were deliberately indifferent to his care after he self-harmed. But his allegations do not suggest deliberate indifference. He alleges that after he self-harmed on July 14, Officer Hampton took him to see a nurse (Doc. 1, p. 9). Nurse Jesse cleaned his wounds but he does not know if she wrote the reason for his self-harm. She did, however, send him to the healthcare unit to receive stitches. These allegations do not suggest deliberate indifference by either Officer Hampton or Nurse Jesse. Lipscomb fails to allege that Officer Hampton knew about the incident until after it occurred, and he alleges that Officer Hampton removed him from his cell and called a nurse. He further acknowledges that mental staff, including Ms. Odermen, placed him on suicide watch (*Id*. at pp. 9-10). He also was provided with care and sent to an outside hospital after he self-harmed in August 2023. Thus, Count 2 is **DISMISSED without prejudice** as to all other defendants except J. Crane.

**Count 3**

Suicide, attempted suicide, and other acts of self-harm clearly pose a serious risk to an inmate's health and safety and may provide the foundation for deliberate indifference to medical needs and failure to protect claims. *See Collins v. Seeman*, 462 F.3d

757, 760 (7th Cir. 2006) (quoting *Sanville v. McCaughtry,* 266 F.3d 724, 733 (7th Cir. 2001)). Where the harm at issue is a suicide or attempted suicide, deliberate indifference requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins,* 462 F.3d at 761 (citations omitted).

As to the first incident of self-harm in July 2023, Lipscomb fails to allege that any defendant was aware of and failed to protect Lipscomb from self-harm. He alleges the self-harm was in response to C/O Hampton giving him a food tray, but he fails to allege that Hampton was aware of Lipscomb's intent to self-harm on that date. He alleges that "mental health staff" knew he would self-harm but did not care or thought it was funny (Doc. 1, pp. 2-3). But Lipscomb fails to identify those staff by name or specific John Doe designation.

As to the August 2023 incident of self-harm, Lipscomb identifies a John Doe officer who provided him with the staple and told him to kill himself (*Id.* at p. 8, 10). He alleges that he informed a "gallery officer" of his need to see the nurse, but the "Doe Defendant" told Lipscomb he could not see the nurse. The "Doe Defendant" then pointed out that there was a staple in front of Lipscomb and he could use it to kill himself (*Id.* at p. 10). He does identify John Doe correctional officers in his case caption. Given that *pro se* Complaints are to be liberally construed, the Court will designate this officer as John Doe #1, and Lipscomb will be allowed to proceed against this individual in Count 3.

Lipscomb also identifies Ms. Wilks as a mental health professional who informed Lipscomb she was aware that Lipscomb had been provided with a staple and that he

10

would harm himself, but she did not interfere because she did not like him (*Id*. at p. 8). She also informed Lipscomb that she knew he had a propensity to self-harm but that she would not intervene (*Id*.). At this stage, that is enough to state a claim against Ms. Wilks for failure to protect.

As to the other named defendants, Lipscomb fails to allege that they were aware of his likelihood to harm himself in July or August and failed to act. He alleges that Mental Health Director Kimberly Wietal was responsible for training and supervising mental health staff and was responsible for the actions of mental health staff. But, as previously stated, there is no supervisor liability under Section 1983. He further alleges that C/O Rice reported Lipscomb had breakfast on August 6, 2023, but there are no allegations to suggest Rice was aware Lipscomb had access to the staple or that he was going to self-harm. Thus, Count 3 is **DISMISSED without prejudice** as to all other named defendants.

## Motion for Preliminary Injunction

In addition to his Complaint, Lipscomb recently filed a motion for preliminary injunction (Doc. 12). In his motion, Lipscomb seeks an injunction ordering that he be placed in the healthcare unit while he continues with his hunger strike. Lipscomb takes issue with officers giving him food trays while on his hunger strike and "bogusly" taking him off of a hunger strike. He believes if he is housed in the healthcare unit, officers will be unable to falsify reports as to the continued state of his hunger strike. He alleges his First Amendment rights are being violated due to the actions of the guards.

Lipscomb is not entitled to the relief that he seeks. As previously stated, Lipscomb's Complaint fails to allege a viable First Amendment retaliation claim. That claim was **DISMISSED without prejudice**. Thus, to the extent he seeks injunctive relief related to that claim, his request for injunctive relief (Doc. 12) is **DENIED**.

### Motion for Counsel

Lipscomb has also filed a motion seeking the recruitment of counsel (Doc. 3). He fails, however, to indicate that he has made any attempts to seek counsel on his own. The section of the form motion requesting that Lipscomb document his attempts to obtain counsel is blank, nor does he include any letters sent to law firms asking for representation. Thus, it is not clear whether Lipscomb has made any attempt to contact counsel or if he has been prevented from doing so by staff. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (The two-fold inquiry asks (1) has the indigent plaintiff made a reasonable effort to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself.). Lipscomb's motion for counsel is, therefore, **DENIED**. Should Lipscomb choose to move for recruitment of counsel in the future, the Court **DIRECTS** him to (1) contact at least three attorneys regarding representation in this case prior to filing another motion, (2) include in the motion the name and addresses of at least three attorneys he has contacted, and (3) if available, attach the letters from the attorneys who declined representation. He should also include in his motion a specific statement as to why he believes recruitment of counsel is necessary in this case.

## Disposition

For the reasons stated above, Count 1 is **DIMISSED without prejudice**. Count 2 shall proceed as to J. Crane but is **DISMISSED** as to all other defendants. Count 3 shall proceed against John Doe #1 correctional officer and Ms. Wilks. All other defendants and claims are **DISMISSED without prejudice**. The Court will add Warden Anthony Wills, in his official capacity only, for purposes of responding to discovery aimed at identifying John Doe #1. All other official capacity claims are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants J. Crane, Ms. Wilks, and Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Lipscomb. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Lipscomb, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Lipscomb, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Lipscomb is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 4, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**